IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BOBBY JOE COLE, JR.,

    Plaintiff,

v.                                        No. 07-1021

BLACK & DECKER (US), INC.,
d/b/a PORTER CABLE

    Defendant.

---

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING THE PLAINTIFF'S COMPLAINT WITH PREJUDICE

---

The Plaintiff, Bobby Joe Cole, Jr., filed the instant race discrimination suit against his employer, Defendant Black & Decker, Inc., d/b/a Porter Cable ("B&D") pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 et seq.[1] Before the Court is the Defendant's motion for summary judgment. (Docket Entry ("D.E.") No. 15.) The Plaintiff has responded and this motion is now ripe for disposition. For the following reasons, the Court grants the motion.

BACKGROUND

Cole is an African-American who lives in Jackson, Tennessee, and works for the Defendant.

---

[1] Section 4-21-401 of the Tennessee Code Annotated states that it is a discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." "Any person injured by any act in violation of the provisions of "the THRA has a civil cause of action. Tenn. Code Ann. § 4-21-311(a).

(D.E. No.15, Statement of Undisputed Facts ¶ 1.) The Plaintiff was originally hired by a company called Porter Cable on April 12, 1995, as a laboratory technician and was later promoted to senior laboratory technician. (Id. ¶ 6.) B&D acquired Porter Cable in late 2004. (Id. ¶ 3.) As a senior laboratory technician at B&D, the Plaintiff's responsibilities included "primarily compliance work, *i.e.*, safety and compliance testing for new tools and for outside agencies' products." (Id. ¶ 7.) His performance evaluations have been generally positive. (Id. ¶ 8.) Prior to working for the Defendant and Porter Cable, Cole obtained an associate's degree from Jackson State Community College. (Id. ¶¶ 4-6.) He also served in the United States Air Force from 1985 to 1995, where he worked in telecommunications and aircraft maintenance. (Id. ¶ 6.) Cole has filed this lawsuit because he has twice in the last three years been denied a promotion to which he believed he was entitled. (D.E. No. 1, Compl. ¶¶ 6-7.) In both cases, a white candidate was chosen instead. (Id.)

B&D uses the following process to identify prospective candidates for promotions: first, it posts a notice that the position is available. Second, interested candidates complete a self-nomination form and submit it to the contact person for the position. Third, the hiring manager identifies candidates who meet the minimum qualifications for an interview. As a general rule, however, all internal candidates are interviewed. Fourth, after the interviews are completed, the interview team identifies a "consensus candidate," and notifies human resources of the decision. Human resources reviews the selection with the hiring manager before the offer is communicated to the successful candidate. Last, the candidates who are not selected are notified. (D.E. No. 15, Statement of Undisputed Facts ¶¶ 9-13.)

In February 2005, B&D posted an opening for a technical support representative, a position that provides technical assistance to internal and external customers, training to current and new

customer care representatives, and assistance in developing training materials. (Id. ¶¶ 15-16.) B&D required that this particular position be filled by someone with Porter Cable and Delta product knowledge. (Id. ¶ 16.) Ten candidates applied, of which two were black males, four were white males, and four were white females. (Id. ¶ 17.) The candidates went through the interview and selection process described herein. (Id. ¶ 18.) The interview team unanimously selected a white male, Phil Childs, as their "consensus candidate." (Id. ¶ 19.) On February 28, 2005, human resources notified the Plaintiff and the other unsuccessful candidates that Childs had been chosen for the position because of his strong technical background with Porter Cable and Delta products. (Id. ¶ 20.) Childs had worked with Delta products since 1992 and had been a lead repair technician for Porter Cable since 2002. (Id. ¶ 21.) He had also previously worked for a sister company of Porter Cable. (Id.) Cole admits that his knowledge of the older Delta products was less extensive, because he only started to work with Delta products around 1999 or 2000. (Id. ¶¶ 21-24.)

In July 2006, B&D posted another opening for a technical support representative position. (Id. ¶ 27.) According to the Defendant, the ideal candidate would have had product knowledge, training skills, and experience dealing with end-users' problems. (Id. ¶ 29.) The responsibilities associated with this position included resolving technical problems that were beyond the scope and training of customer care representatives, providing training to new customer care representatives, and assisting in the development of training materials. (Id.) Effective communication skills were also desired, along with a college degree. (Id.)

The Plaintiff again applied for the position. (Id. ¶ 27.) The group of applicants consisted of three black males, one Hispanic male, three white males, and one white female. (Id. ¶ 31.) In addition to being interviewed, the job candidates took a mechanical and electrical knowledge test.

(Id. ¶ 34.) After narrowing the field to three candidates, including Cole, the interviewers selected Rita Crocker, the white female. (Id. ¶¶ 37, 40.) The interviewers thought that Crocker and the other finalist had more customer care experience than Cole. (Id. ¶ 37.) Furthermore, one of the interviewers, John Nichols, a technical service manager, asserted that it concerned him that the Plaintiff gave wrong answers in response to test questions involving subject matter that he had assured the interviewers he was familiar with. (Id. ¶ 35.) While Crocker's test score was similar to Cole's, her results were consistent with her admission that she needed additional training in certain areas. (Id. ¶ 36.) Furthermore, Crocker had a bachelor's degree. (Id. ¶ 44.) The Defendant also acknowledged that her gender played a role in her selection because B&D was committed to diversity and there were no women in that position at the time. (Id. ¶ 39.)

On August 18, 2006, the candidates not offered the position were notified by an interoffice memo that Crocker had been selected. (Id. ¶ 40.) Cole contends that she had less expertise than him in the field of electrical wiring, as well as less product knowledge and fewer mechanical skills. (Id. ¶¶ 51-52.) He conceded, however, that there was no direct evidence that he was not selected for the position based on his race. (Id. ¶¶ 53-54.) Because he nonetheless believed that he was a victim of racial discrimination, he filed a Charge of Discrimination with the EEOC and the Tennessee Human Rights Commission on August 26, 2006, alleging race and sex discrimination based on B&D's failure to promote him in 2006. (Id. ¶ 56.) The Defendant filed the instant suit on January 3, 2007.

In its motion for summary judgment, the Defendant argues that any claim based on a failure to promote Cole in 2005 is barred by the applicable statute of limitations. In addition, B&D maintains that the Plaintiff cannot establish a prima facie case of discrimination based on the facts surrounding either the 2005 or 2006 promotion. (D.E. No. 15, Mem. in Supp., at 12-17.) The

Defendant further asserts that the Plaintiff is unable to establish that there is a triable issue of fact as to whether its reason for not promoting him was merely a pretext for racial discrimination. (Id. at 17-20.) In response, Cole contends that summary judgment is inappropriate because this case cannot be resolved without assessing the motives of those involved in the hiring process, something the jury should decide. (See, generally, D.E. No. 17, Resp. in Opp.)

STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at

322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

I. Application of the Statute of Limitations to the Defendant's 2005 Denial of Promotion

Tenn. Code Ann. § 4-21-311(d) requires that any claim brought pursuant to the THRA must be filed within one year of when the "alleged discriminatory practice ceases." The continuing violation exception is incorporated into this statute of limitations. Booker v. Boeing Co., 188 S.W.3d 639, 647 (Tenn. 2006). This doctrine "permits a plaintiff to obtain relief for a time-barred act by linking it in a series of related acts to one or more acts which falls within the limitations period." Parks v. Fed. Express Corp., 1 F. App'x 273, 276 (6th Cir. 2001). The United States Supreme Court held in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), however, that certain discriminatory acts that are considered "discrete" are not actionable" if time barred, *even when they are related to acts alleged in timely filed charges*." Id. at 113 (emphasis added). The Court noted that a failure to promote is a discrete act. Id. at 114. According to the Defendant, therefore, because the Plaintiff did not file suit until January 3, 2007, the one-year statute of limitations had expired on any claim based on the first denial of promotion in February 2005. (D.E. No. 15, Mem. in Supp., at 12.)[2]

---

[2] The Plaintiff does not address this argument in his response to the motion for summary judgment. (See D.E. No. 17, Resp. in Opp.)

While the purpose of the THRA is to provide "for execution within Tennessee of the policies embodied in the federal Civil Rights Acts . . . .," Tenn. Code Ann. § 4-21-101(a), the Tennessee Supreme Court has held that it is not bound by the decisions of federal courts and need not apply federal law when it conflicts with the Tennessee Human Rights Act. Booker, 188 S.W.3d at 647. As such, the Tennessee Supreme Court has decided that Morgan, which involved a Title VII claim, does not apply to cases involving the THRA, because the decision "essentially eliminated the continuing violation doctrine." Id. Nonetheless, in deciding that pay discrimination was a continuing violation, the court noted that "a denial of promotion is a discrete act" that must fall within the limitations period to be actionable. Id. at 648; see also Austion v. City of Clarksville, 244 F. App'x 639, 649 (6th Cir. 2007) (holding that two denials of promotion were discrete acts of discrimination under the THRA); Gilbert v. Choo-Choo Partners L.P., No. E2006-01507-COA-R3-CV, 2007 WL 1049270, at *6 (Tenn. Ct. App. Apr. 9, 2007 ("[W]here the alleged discriminatory practice is a discrete act such as termination, failure to promote, denial of transfer, or refusal to hire, each alleged act of discrimination must be evaluated independently to determine whether it occurred within the limitations period.") (internal quotation marks and citation omitted).

Based on the Tennessee Supreme Court's interpretation of its own state civil rights statutes, this Court agrees with B&D that by the time the Plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission in August 2006, and the instant lawsuit in January 2007, the one-year statute of limitations had expired on any claim founded on the Defendant's February 2005 decision to deny Cole a promotion. B&D's motion for summary judgment is therefore GRANTED

to the extent the Plaintiff seeks any relief based on the company's earlier failure to promote him.[3] Nonetheless, the Court may still consider the circumstances surrounding the Defendant's February 2005 decision to deny Cole a promotion as background evidence in support of the Plaintiff's claim over the August 2006 denial of promotion. Morgan, 536 U.S. at 113.

> II. Application of the McDonnell Douglas Burden-Shifting Framework to the 2006 Denial of Promotion

A plaintiff may establish a prima facie case of race discrimination by proffering either direct or circumstantial evidence. Abdulnour v. Campbell Soup Supply Co., 502 F.3d 496, 501 (6th Cir. 2007).[4] Because Cole presents only circumstantial evidence of discrimination, the Court shall analyze his claims under the McDonnell Douglas burden-shifting approach. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007). Under that approach, the Plaintiff must first establish a prima facie case of racial discrimination based upon a failure to promote, by demonstrating that:

> (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000) (citations omitted). If Cole successfully establishes a prima facie case, the burden shifts to the Defendant to provide a

---

[3] Because Cole admitted that his August 2006 Charge of Discrimination related only to B&D's most recent decision not to promote him, it is unclear whether he even intended to bring suit based on the company's February 2005 failure to promote. (See D.E. No. 18, Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 56.)

[4] The Court applies federal law to this case, because the Tennessee Supreme Court has held that "it is appropriate to examine federal law when analyzing issues under the Tennessee Human Rights Act." Weber v. Moses, 938 S.W.2d 387, 390 (Tenn. 1996) (citation omitted). Unlike in Booker, there is no conflict between the language of the THRA and the application of federal law in this case.

8

legitimate, non-discriminatory reason for the employment decision.  Abdulnour, 502 F.3d at 502.
Finally, if the Defendant meets its "burden of articulation," the Plaintiff must then come forward
with evidence to show that B&D's proffered reason is merely pretextual.  Id.  "On a motion for
summary judgment, a district court considers whether there is sufficient evidence to create a genuine
dispute at each stage of the McDonnell Douglas inquiry"  Clay, 501 F.3d at 703.

  B&D contends that Cole is unable to present a prima facie case of discrimination because
he cannot establish the fourth prong noted above, namely that the successful candidate had similar
qualifications as the Plaintiff.  (D.E. No. 15, Mem. in Supp., at 15.)  According to the Defendant,
the interviewers selected Rita Crocker, the white woman who was awarded the technical support
representative position in August 2006, because of her experience and knowledge, as well as her
interview.  (Id.)  The following undisputed facts support this contention.  First, Crocker had worked
in the customer service department since April 2001, while Cole had no similar experience.  (D.E.
No. 15, Statement of Undisputed Facts ¶¶ 41-42, 46.)  Because the position was essentially a
customer service job, such experience was desirable.  (Id. ¶ 29.)  Furthermore, as a customer service
representative, Crocker was familiar with relevant software and had developed skills as a trainer.
(Id. ¶ 43.)  Second, she had a college degree, which Cole did not.  (Id. ¶¶ 44, 4.)  Last, unlike the
Plaintiff, Crocker did not exaggerate her expertise during her interview.  (Id. ¶¶ 35-36.)[5]

  Viewing the evidence in the light most favorable to the Plaintiff, however, the Court does
not agree that Cole and Crocker's qualifications were so dissimilar that the Plaintiff cannot establish
a prima facie case.  Cole and Crocker were two of the three finalists for the same position and all

---

[5] The Plaintiff contests this last fact, because it is a matter of intent or motive.  (D.E. No.18, Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 35-36.)

three candidates were considered "particularly strong." (D.E. No. 15, Statement of Undisputed Facts ¶ 37.) One of the interviewers identified the Plaintiff as his top choice for the position, two others selected Crocker as their first choice, while the remaining two preferred the third candidate, a white male. (Id.) Thus, the decision was very close. While Cole and Crocker had different strengths, with Crocker having more customer service experience and Cole having more lab experience working with the tools that the person was to provide assistance using, both needed additional training. (Id. ¶¶ 36-38.) Further, both had worked for the company for approximately thirteen years. (Id. ¶¶ 6, 41.) Thus, while their qualifications were not identical, a reasonable jury could conclude that they were similarly qualified. See Brewer v. Cedar Lake Lodge, Inc., 243 F. App'x 980, 988 (6th Cir. 2007) (holding that the plaintiff had established the fourth prong of a prima facie discrimination case when the employee who was promoted instead of her had more experience and more seniority within the organization, but interacted less effectively with clients and had a less flexible schedule; furthermore, all three people involved in the hiring deemed the plaintiff to be equally qualified, but the other person was promoted based on her seniority).

Because the Plaintiff has established a prima facie case of discrimination, the Court moves to the next stage of the McDonnell Douglas burden-shifting approach and determines whether the Defendant has provided a legitimate, non-discriminatory reason for the employment decision. See Abdulnour, 502 F.3d at 502. B&D's non-discriminatory reason for promoting Crocker over Cole is that she "was the most qualified candidate for promotion because of her related experience, knowledge, and interview results and, importantly, her five years in Customer Care." (D.E. No. 15, Mem. in Supp., at 18.) The Sixth Circuit has held that an employer's preference for the more experienced and knowledgeable candidate, who performs better at the interview, constitutes a

legitimate, non-discriminatory reason for denying a plaintiff a promotion. Campbell v. Univ. of Akron, 211 F. App'x. 333, 349 (6th Cir. 2006). Thus, with this showing, the burden again shifts to the Plaintiff to present evidence that this reason is merely a pretext designed to mask discrimination. See Abdulnour, 502 F.3d at 502.

To carry his burden of demonstrating that B&D's proffered explanation for promoting Crocker, rather than Cole, was merely pretextual, the Plaintiff must establish that it "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct." Zambetti v. Cuyahoga Cmty. Coll., 314 F.3d 249, 258 (6th Cir. 2002) (citation omitted). Cole contends that summary judgment should be denied because a determination of the intent of those involved in the decision to deny him a promotion can only be made by a jury. (D.E. No. 17, Resp. in Opp., at 3.) According to the Plaintiff, resolving the case at this stage would require the Court to impermissibly determine the credibility of the witnesses. (Id. at 4.) As such, Cole maintains that the Defendant's "motion for summary judgment rises or falls on its ability to persuade the court that its motives were pure because it says they were pure." (Id. at 7.)

The Plaintiff's argument that he can avoid summary judgment by simply asserting that the Defendant's witnesses may have been untruthful in their depositions ignores the fact that the burden rests on him to show that there is a triable issue of fact as to whether B&D's proffered reason for not promoting him is pretext. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'") (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Furthermore the Sixth Circuit

11

has rejected the argument that "the very analysis of whether an employer's proffered reasons for terminating an employee were pretextual necessarily relies on factual credibility determinations upon which it is improper to base an entry of summary judgment," holding instead that "a defendant's production of a legitimate, nondiscriminatory reason for termination not only rebuts the presumption of discrimination created by a plaintiff's *prima facie* case, but also invites summary judgment review of plaintiff's burden to show pretext." White v. Ohio, 2 F. App'x 453, 458 (6th Cir. 2001).[6]

Cole also argues that a jury could infer pretext from the fact that he was more qualified for the positions he applied for than either of the successful candidates. (D.E. No. 17, Resp. in Opp.,

---

[6] The Plaintiff cites several inapposite cases in support of his argument that granting B&D's motion for summary judgment would require the Court to impermissibly evaluate the witnesses' credibility. The first of these is Hafford v. Seidner, 183 F.3d 506 (6th Cir. 1999), a hostile work environment claim wherein the Sixth Circuit held that the district court wrongly granted summary judgment when the plaintiff offered evidence that his supervisors and coworkers "engaged in a pattern of racial harassment consisting of not only racial slurs, but also physical threats." Id. at 513. This case provides no assistance because it involves hostile work environment and retaliation claims and therefore does not apply the McDonnell Douglas burden-shifting framework. Next, Cole cites Shreve v. Jessamine County Fiscal Court, 453 F.3d 681, 688 (6th Cir. 2006) for the uncontroverted proposition that this Court may not make determinations of witness credibility at the summary judgment stage. The Court need not judge the credibility of any of the witnesses to conclude that there is no evidence that the Plaintiff was racially discriminated against, however. It need only decide that Cole has not provided enough proof of discrimination that a reasonable juror could find that he is entitled to a verdict. See Anderson, 477 U.S. at 252. Last, Cole cites a Tennessee Supreme Court case, Hale v. Ostrow, 166 S.W.3d 713, 718 (Tenn. 2005), wherein the court held that causation is a jury matter. However, that case involves a state law negligence claim. Id. In Hale, the Court held that "there [was] a genuine issue of material fact as to whether the overgrown bushes on the [defendant]'s property were a cause in fact of her injury." Id. The court further decided that "there was a genuine issue of material fact as to whether the bushes were a substantial factor in [the plaintiff's] fall, and as to whether the harm to her was foreseeable." Because 1) this case does not involve any determination of credibility at the summary judgment stage and 2) the concept of causation in tort law is not applicable to an employment discrimination claim, the Court concludes that Hale is not relevant to the motion before it.

at 8 ("Given the diametrically opposed testimony of Mr. Cole and the defense witnesses [on the subject of his and the other applicants' qualifications] . . . reasonable persons [sic] views could differ. Who is right, and who is not, is for the jury.").) The Sixth Circuit has held that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (citations omitted); see also Burdine, 450 U.S. at 259 (noting that the fact that an employer has chosen a less-qualified candidate may be probative of whether the employer's reasons are pretext). However, "[e]vidence that a rejected applicant was as qualified or marginally more qualified than the successful candidate is insufficient, in and of itself, to raise a genuine issue of fact that the employer's proffered legitimate, non-discriminatory rationale was pretextual." Bender v. Hecht's Dep't Stores, 455 F.3d 612, 627 (6th Cir. 2006), cert. denied 127 S. Ct. 2100 (2007); see also Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc) ("If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate-something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.") (footnote omitted).

The Plaintiff bases his argument that he is better qualified than Crocker on his own deposition, wherein he admitted that he is unfamiliar with her credentials. (See D.E. No 15 Ex. 1, Dep. of Pl., at 110-15.) For example, Cole testified that he was unsure what Crocker's previous position was, but that he had heard from a third party that she was a sales representative. (Id. at 110). He also confirmed that he did not know how she scored on the test all candidates were given.

(Id.) When asked why he believed Crocker was a less qualified candidate, he discussed his own qualifications, rather than hers, and then admitted that he had no facts on which to base his opinion that she was not as knowledgeable as he was, other than that she had once worked as an "assembly line person" and such employees do not "get the full knowledge of the wiring schematics." (Id. at 113-16.) In response to the Defendant's Statement of Undisputed Facts, the Plaintiff admits that Crocker's qualifications are as described on page nine of this Order, but asserts that they are not material. (D.E. No. 18, Pl's Resp. to Def.'s Statement of Undisputed Facts ¶¶ 41-44.)

The Court finds that the Plaintiff's conclusory and subjective assessment of Crocker's merit in comparison to his own does not establish an issue of material fact as to whether B&D's proffered reason for denying him a promotion either had no basis in fact, did not actually motivate the Defendant's conduct, or was insufficient to warrant promoting Crocker over Cole. See Vredevelt v. GEO Group, Inc., 145 F. App'x 122, 131 (6th Cir. 2005) ("Other than [the plaintiff's] subjective claim that she was more qualified than [the other candidate], she has failed to present evidence to support her claim that [the defendant's] stated reasons for hiring [the other candidate] are a pretext."). Moreover, viewing the facts in the light most reasonable to the Plaintiff, the Court concludes that the Defendant's decision to promote Crocker, rather than Cole, was reasonable. The Plaintiff admits that the position at issue was a customer service position and that the company stated a preference for someone with a college degree. (D.E. No. 18, Pl's Resp. to Def.'s Statement of Undisputed Facts ¶ 29.) He also admits that Crocker had customer service experience, as well as a college degree, and that he did not. (Id. ¶¶ 4, 41-42, 44.) Last, he has no proof to support his opinion that she was less knowledgeable. Thus, no reasonable juror could conclude that he was so

much better qualified for the job that B&D's explanation of why it chose Crocker over Cole must be false.

The Plaintiff also bases his argument that he was the most qualified candidate for the 2005 promotion on his own testimony, wherein he argued that his educational and military background, as well as his performance within the laboratory, made him a better choice than Childs, although he admitted not knowing what Childs's educational background was or whether he had served in the military. (See D.E. No 15 Ex. 1, Dep. of Pl., at 85-87, 77.) Further, he provided no examples to show that his own performance was superior to Childs's, but vaguely asserted that while he was "sure that [Childs] had some mechanical skills, when you tie them all together and looking from a professional standpoint of e-mailing to customers and guiding them, that I was the main choice." (Id. at 86.) He also contended that he heard from a third party that Childs's communication skills were poor, but did not claim to have any first-hand knowledge thereof or provide examples. (Id. at 77, 82.) The Plaintiff acknowledged that Childs had more knowledge of older Delta products, but claimed that *he* had more knowledge of Porter Cable products. (Id. at 76.) The record reveals that Cole began working at Porter Cable in 1995, while Childs worked at a sister company of Porter Cable before becoming a lead repair technician at that company in 2002. (D.E. No. 18, Pl.'s Resp. to Def.'s Undisputed Statement of Facts ¶¶ 6, 21.) Unlike Cole, he also had training in customer service and had taught classes. (Id. ¶ 21.) While the record may be uncertain as to who knew more about Porter Cable products, the fact that Childs had been a lead repair technician at Porter Cable since 2002, knew more about Delta cable than Cole, and had some customer service experience, does not support a finding that the Plaintiff was so much more qualified for the position of technical

support representative that the Defendant's explanation for choosing Childs over Cole is called into doubt.[7]

Because Cole has neither provided any qualifications evidence significant enough to call into question B&D's explanation for why it declined to promote him, nor any other proof of discrimination, the Court finds that the Plaintiff has not carried his burden of persuading the Court that there is a triable issue of fact as to whether the Defendant discriminated against the Plaintiff on the basis of race.

CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's motion for summary judgment and DISMISSES this action with prejudice.

**IT IS SO ORDERED** this 3rd of July, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[7] The Plaintiff also appears to argue that knowledge of Delta products was not really required for the position or that it was less important, because the older Delta products were no longer being manufactured,. (D.E. No. 17, Resp. in Opp., at 5 (citing D.E. No 15 Ex. 1, Dep. of Pl., at 85).) However, technical support representatives aid customers in repairing and maintaining existing products (D.E. No. 15, Pl's Statement of Undisputed Facts ¶ 16), and Cole provides no evidence that there was less demand for assistance in repairing old Delta products than there was for old Porter Cable products. The Court cannot base a finding that Cole was significantly more qualified than Childs on the Plaintiff's speculation that there was less demand therefor.

16